Joseph G. Dicks (SBN 127362)
Linda G. Workman (SBN 128621)
DICKS & WORKMAN ATTORNEYS AT LAW, APC
750 B Street, Suite 2720
San Diego, CA  92101
Telephone:  (619) 685-6800
Facsimile:  (610) 557-2735
Email:   jdicks@dicks-workmanlaw.com
            lworkman@dicks-workmanlaw.com

Attorneys for ALEX WHITE, Plaintiff

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEX WHITE, On His Own Behalf And On Behalf Of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>NIPPON YUSEN KABUSHIKI KAISHA, LTD.;<br>NYK LINE (NORTH AMERICA), INC.;<br>EUKOR CAR CARRIERS, INC.;<br>COMPAÑIA SUD AMERICANA DE VAPORES, S.A.;<br>CSAV AGENCY NORTH AMERICA, LLC;<br>KAWASAKI KISEN KAISHA, LTD.;<br>'K' LINE AMERICA, INC.;<br>MITSUI O.S.K. LINES, LTD.;<br>MOL (AMERICA) INC.;<br>MOL LOGISTICS (U.S.A.), INC.;<br>NISSAN MOTOR CAR CARRIER CO., LTD.;<br>WORLD TRANSPORT CO., LTD.;<br>WORLD LOGISTICS SERVICE (U.S.A.), INC.;<br>TOYOFUJI SHIPPING CO., LTD.;<br>FUJITRANS U.S.A., INC.;<br><br>[Caption continued on next page] | Civil No.   **'13 CV 1537 JAH  JMA**<br><br>**CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNTIVE RELIEF FOR VIOLATIONS OF:**<br><br>**(1) FEDERAL ANTITRUST LAWS (SHERMAN ACT); AND**<br><br>**(2) CALIFORNIA UNFAIR COMPETITION AND BUSINESS PRACTICES LAWS**<br><br><u>DEMAND FOR JURY TRIAL</u> |

CLASS ACTION COMPLAINT

WALLENIUS LINES, AB;
WILH. WILHELMSEN HOLDING ASA;
WILH. WILHELMSEN ASA;
WALLENIUS WILHELMSEN
LOGISTICS AMERICAS LLC;
WWL VEHICLE SERVICES
AMERICAS INC.;
AMERICAN SHIPPING AND
LOGISTICS GROUP;
AMERICAN ROLL-ON ROLL-OFF
CARRIER, LLC; and
AMERICAN AUTO LOGISTICS, LP;
and
AMERICAN LOGISTICS NETWORK,
LLP,

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

                    Defendants

CLASS ACTION COMPLAINT

Plaintiff Alex White ("Plaintiff"), for his complaint, alleges upon personal knowledge as to himself and his own actions, and upon information and belief, including the investigation of counsel, as follows:

## NATURE OF ACTION

### Summary of Material Facts

1.      This is an antitrust class action pursuant to section 1 of the Sherman Act, 15 U.S.C. §§ 1-7, and a class action brought pursuant to the laws of California brought by Plaintiff, on his own behalf and on behalf of classes of persons and entities in California who indirectly purchased from any Defendant or current or former subsidiary or affiliate, vehicle carrier services for personal use (not resale), incorporated into the price of the a new vehicle purchased or leased during the period from and including January 2008 through such time as the anticompetitive effects of Defendants' conduct ceases (the "Class Period").

2.      Defendants (as defined *infra.*at ¶¶ 8-28) are automotive carriers who transport large numbers of cars and trucks including agriculture and construction equipment vehicles (collectively, "Vehicles") using specialized cargo vessels for transport across water ("Vehicle Carriers").  Vehicle Carriers use a specialized cargo ship that has the capacity to set a ramp at dockside, bow and/or stern, and roll on and off most types of wheeled vehicles.  Within the shipping industry, such cargo ships are referred to as a Roll-on/Roll-off Cargo Vessel or a "RORO or ro-ros" and are used to carry Vehicles from port to port.  "Vehicle Carrier Services" refers to the paid transportation of Vehicles by RORO.

3.      The aforementioned Defendants provide, market, and/or sell Vehicle Carrier Services in California.  These providers of Vehicle Carrier Services globally and in California control over 70% of  the Vehicle Carrier Services market and have engaged in a five year-long conspiracy to fix, raise, maintain and/or stabilize Vehicle Carrier Services prices, and allocate the market and customers in California for Vehicle Carrier Services.

CLASS ACTION COMPLAINT

4.     On September 12, 2012, the Japan Fair Trade Commission ("JFTC") began investigating approximately ten Vehicle Carriers on suspicion of forming a global cartel to raise the prices of shipping overseas.  It has been reported that the United States Department of Justice's Antitrust Division ("DOJ") is investigating unlawful, anticompetitive conduct amid allegations that Vehicle Carriers have colluded on prices they charged auto exporters and allocated orders among themselves despite pressure to cut prices by automakers whose profit margins have been shrinking since the 2008 global financial crisis.

**Summary of Claims**

5.     Defendants and their co-conspirators colluded and conspired to suppress and eliminate competition in the Vehicle Carrier Services market by agreeing to fix, stabilize and maintain the prices of, Vehicle Carrier Services in California.  The combination and conspiracy engaged in by the Defendants and their co-conspirators resulted in unreasonable restraint of interstate and foreign trade and commerce in violation of the Sherman Act, 15 U.S.C. §§ 1-7 and California Unfair Competition statutes.

6.     As a direct result of the anticompetitive and unlawful conduct alleged herein, Plaintiff and the Class paid artificially inflated prices for Vehicle Carrier Services incorporated into the price of new imported Vehicles purchased or leased in California during the Class Period, and have thereby suffered antitrust injury to their business or property.

**PARTIES**

**Plaintiff**

7.     Plaintiff Alex White is a resident in the County of San Diego in the State of California who purchased Vehicle Carrier Services indirectly from one or more Defendants and/or its co-conspirators.

///

///

CLASS ACTION COMPLAINT

- 2 -

**Defendants**

8.     Defendant Nippon Yusen Kabushiki Kaisha, Ltd. ("NYK Line") is a Japanese company with its principal place of business in Tokyo, Japan.  NYK Line, directly or through its wholly owned and/or controlled subsidiaries and joint ventures, provided, marketed and/or sold Vehicle Carrier Services throughout California, including in this District, during the Class Period.

9.     Defendant NYK Line (North America), Inc. ("NYK Line America") is a subsidiary wholly owned and /or controlled by NYK Line and a resident of New Jersey.  At all times during the Class Period, its activities in the United States were under the control and direction of its Japanese parent, which controlled its policies, sales, and finances, and for which it acted as its agent in the United States.  NYK Line America, directly or through its subsidiaries and joint ventures, provided, marketed and/or sold Vehicle Carrier Services throughout California, including in this District, during the Class Period.

10.     Defendant Wilh. Wilhelmsen Holding ASA ("WWH") is a Norwegian limited liability company with its principal place of business in Baerum, Norway.  WWH, directly and/or through its subsidiaries and joint ventures, provided, marketed and/or sold Vehicle Carrier Services throughout California, including in this District, during the Class Period. WWH is the majority owner of Defendant Wilh. Wilhelmsen ASA.

11.     Defendant Wilh. Wilhelmsen ASA ("WW ASA") is a Norwegian private limited liability company with its principal place of business in Oslo, Norway.  WW ASA, directly and/or through its subsidiaries and joint ventures, provided, marketed and/or sold Vehicle Carrier Services throughout California, including in this District, during the Class Period.  WW ASA partners in joint ventures with Defendants NYK Line and Wallenius.  WW ASA has a 50 percent ownership interest in Defendant Wallenius Wilhelmsen Logistics AS and a 40percent ownership interest in Defendant EUKOR Car Carriers, Inc.

CLASS ACTION COMPLAINT

12.     Defendant Wallenius Lines AB ("Wallenius") is a Swedish corporation with its principal place of business in Stockholm, Sweden.  Wallenius, directly and/or through its subsidiaries and joint ventures, provided, marketed and/or sold Vehicle Carrier Services throughout California, including in this District, during the Class Period.  Wallenius partners in joint ventures with Defendants NYK Line and WW ASA.  Wallenius has a 50 percent ownership interest in Defendant WWL and a 40-percent ownership interest in Defendant ECC.

13.     Defendant Wallenius Wilhelmsen Logistics AS ("WWL") is a joint venture corporation between WW ASA and Wallenius, and operates most of those companies' vessels.  WWL was established in 1999 with headquarters in Norway. WWL is an operating company within both the shipping segment and the logistics segment. The company provides global transportation services for the automotive, agricultural, mining and construction equipment industries and its services consist of supply chain management, ocean transportation, terminal services, inland distribution and technical services. WWL is the contracting party in customer contracts with industrial manufacturers for cars, agricultural machinery, etc.  WWL, directly and/or through its subsidiaries and joint ventures, provided, marketed and/or sold Vehicle Carrier Services throughout California, including in this District, during the Class Period.

14.     Defendant Wallenius Wilhelmsen Logistics Americas LLC ("WWLA") is a subsidiary of and wholly owned and/or controlled by Defendant WWL.  At all times during the Class Period, its activities in the United States were under the control and direction of WWL, which controlled its policies, sales, and finances.  It has offices in several states, including California, and is a resident of New Jersey. WWLA acts as one of Defendant WWL's agent in the United States and is operated by Defendant WWL.  It shipped Vehicles into the United States, including in the state of California, during the Class Period.  WWLA also directly and/or through its

CLASS ACTION COMPLAINT

- 4 -

subsidiaries, provided, marketed and/or sold Vehicle Carrier Services throughout California, including in this District, during the Class Period.

15. WWL Vehicle Services Americas Inc. is a subsidiary of and wholly owned and/or controlled by Defendant WWL. At all times during the Class Period, its activities in the United States were under the control and direction of WWL, which controlled its policies, sales, and finances. It is based in California and acts as one of WWL's agents in the United States and provides vehicle processing, logistics, and marine services to the automotive industry.

16. Defendant Compañía Sud Americana de Vapores S.A. ("CSAV") is a Chilean corporation with its principal place of business in Valparaíso, Chile and a regional office in Iselin, New Jersey. CSAV, directly and/or through its subsidiaries and joint ventures, provided, marketed and/or sold Vehicle Carrier Services throughout California, including in this District, during the Class Period.

17. Defendant CSAV Agency North America, LLC ("CSAV Agency"), a subsidiary wholly owned and controlled by Defendant CSAV, is a limited liability company headquartered in Iselin, New Jersey. At all times during the Class Period, its activities in the United States were under the control and direction of its Chilean parent, which controlled its policies, sales, and finances. It is the exclusive maritime agent for Defendant CSAV in the United States. CSAV Agency shipped Vehicles into the United States during the Class Period. CSAV Agency also provided, marketed and/or sold Vehicle Carrier Services throughout California, including in this District, during the Class Period.

18. Defendant EUKOR Car Carriers, Inc. ("ECC") is a South Korean company with its principal place of business in Seoul, South Korea. ECC directly and/or through its subsidiaries provided, marketed and/or sold Vehicle Carrier Services throughout California, including in this District, during the Class Period. ECC is a joint venture between Wilh. Wilhelmsen ASA, Wallenius, Hyundai Motor Company and Kia Motors Corporation.

CLASS ACTION COMPLAINT

- 5 -

19.     Defendant American Shipping and Logistics Group ("ASL Group") consists of several companies, all of which are established on a joint venture basis between WW ASA and Wallenius. All companies in the ASL Group are headquartered in the U.S. and consist of liner service operating companies, ship owning companies, and logistics services companies. The primary operating companies in the ASL Group are:

    a. Defendant American Roll-on Roll-off Carrier, LLC ("ARC") is the largest U.S. Flag ro-ro carrier and the third largest U.S. Flag carrier overall in international trade.  ARC is a U.S. based company owned 50/50 by Wilh. Wilhelmsen ASA and Wallenius. ARC is the vessel-operating company in ASL Group, and provides ro-ro liner services in the US - international trades.

    b. Defendant American Auto Logistics, LP ("AAL") delivers total door-to-door logistics solution services, and is the contract service provider to the U.S. Government under the Global POV Contract. Under this program, AAL via its global network, transports vehicles and provides POV storage for military and U.S. government personnel stationed abroad.  It is a resident of California.

    c. Defendant American Logistics Network, LLP ("ALN") develops and provides systems for logistics services including car storage, as well as managing vehicle processing and storage facilities.

20.     Defendant Kawasaki Kisen Kaisha, Ltd. ("'K' Line"), is a Japanese corporation with its principal place of business in Tokyo, Japan.  'K' Line directly and/or through its subsidiaries and joint ventures, marketed and/or sold Vehicle Carrier Services throughout California, including in this District, during the Class Period.

21.     Defendant 'K' Line America, Inc. ("'K' Line America") is a wholly owned subsidiary of 'K' Line and a resident of New Jersey. 'K' Line America

CLASS ACTION COMPLAINT

provided, marketed and/or sold Vehicle Carrier Services throughout California, including in this District, during the Class Period.  At all times during the Class Period, its activities in the United States were under the control and direction of its Japanese parent, which controlled its policies, sales, and finances.  It is headquartered in Richmond, Virginia, has offices throughout the United States, including in this District, and acts as Defendant K Line's shipping agent in the United States.

22.    Defendant Mitsui O.S.K. Lines, Ltd. ("MOL") is a Japanese company with its principal place of business in Tokyo, Japan.  It and its wholly owned subsidiaries, Defendants MOL (America) Inc. and MOL Logistics (U.S.A.) Inc., with offices throughout the United States, together directly and/or through their subsidiaries, provided, marketed and/or sold Vehicle Carrier Services throughout California, including in this District, during the Class Period.  Collectively, Defendants MOL, MOL (America) Inc., and MOL Logistics (U.S.A.) Inc. are referred to herein as "MOL Group."

23.    Defendant Nissan Motor Car Carrier Co., Ltd. ("Nissan") is a Japanese company that, directly and/or through its subsidiaries, provided, marketed and/or sold Vehicle Carrier Services throughout California, including in this District, during the Class Period.

24.    Defendant World Transport Co., Ltd. ("World Transport"), is a Japan company who serves as the transporation sales agency business on behalf of Defendant Nissan, that directly and/or through one or more of its subsidiaries provided, marketed and/or sold Vehicle Carrier Services throughout California, including in this District, during the Class Period.

25.    Defendant World Logistics Service (U.S.A.), Inc. ("World Logistics"), is a wholly owned subsidiary of World Transport Co., Ltd. and is a resident of California that, directly and/or through their subsidiaries, provided, marketed and/or sold Vehicle Carrier Services throughout California, including in this District, during the Class Period.

CLASS ACTION COMPLAINT

26.     Collectively, Defendants Nissan, World Transport, and World Logistics are all referred to herein as "Nissan MCC."

27.     Defendant Toyofuji Shipping Co., Ltd. ("Toyofuji") is a Japanese publicly traded company.   Toyofuji, directly and/or through its subsidiaries, marketed and/or sold Vehicle Carrier Services throughout California, including in this District, during the Class Period.  Toyofuji was jointly founded and owned by its majority shareholders Toyota and Fujitrans ("Fujitrans").   Fujitrans is a Japanese transportation corporation with subsidiaries in nearly all major continents, North America included.

28.     Defendant Fujitrans U.S.A., Inc. ("Fujitrans U.S.A.") is the United States subsidiary to Fujitrans and is part owner of Toyofuji.   Fujitrans U.S.A. maintains a principal place of business in California.  Fujitrans U.S.A. provided, marketed, and/or sold "Vehicle Carrier Services" throughout California, including in this District, during the Class Period.  At all times during the Class Period, its activities in the United States were under the control of its Japanese parent which controlled its policies, sales, and finances.

## JURISDICTION AND VENUE

29.     This Court has federal question jurisdiction pursuant to the Sherman Act, 15 U.S.C. §§ 1-7, the Clayton Act, 15 U.S.C. §§ 15 , 26; 28 U.S.C. §§ 1331, 1337; and it has supplemental jurisdiction over the California state law claims pursuant to 28 U.S.C. § 1367.

30.     This Court also has jurisdiction pursuant to 28 U.S.C. § 1332(d)(2) because sufficient diversity of citizenship exists between parties in this action, the aggregate amount in controversy exceeds $5,000,000, and there are 100 or more Class members.

31.     Venue is proper in this district pursuant to Section 12 of the Clayton Act 15 U.S.C § 22 and 28 U.S.C. §§ 1391 (b)-(d),because a substantial part of the events giving rise to Plaintiff's claims occurred in this District, a substantial portion of the

CLASS ACTION COMPLAINT

affected interstate trade and commerce discussed below has been carried out in this District, and one or more of the Defendants, are licensed to do business in, are doing business in, had agents in, or are found or transact business in California and this District.

32.    This Court has in personam jurisdiction over the Defendants because each, either directly or through the ownership and/or control of its subsidiaries, *inter alia*: transacted business in the United States, including in this District; directly or indirectly sold or marketed Vehicle Carrier Services throughout California, including in this District; had substantial aggregate contacts with the United States as a whole, including in this District; or were engaged in an illegal price-fixing conspiracy that was directed at, and had a direct, substantial, reasonably foreseeable and intended effect of causing injury to, the business or property of persons and entities residing in, located in, or doing business throughout California, including in this District. The Defendants also conduct business in California, including in this District, and they have purposefully availed themselves of the laws of the United States.

33.    The Defendants' conspiracy and unlawful conduct described herein adversely affected persons and entities in California who purchased cars for personal use and not for resale, including Plaintiff and the Class.

## CLASS ACTION ALLEGATIONS

34.    Plaintiff brings this action on behalf of himself, and as a class action under Federal Rules of Civil Procedure 23(a), (b)(2)-(3), seeking damages and equitable and injunctive relief on behalf of the following class (the "Class"):

> All persons and entities in California who indirectly purchased, from any Defendant or any current or former subsidiary or affiliate thereof, or any co-conspirator, Vehicle Carrier Services for personal use and not for resale, incorporated into the price of a new Vehicle purchased or leased during the Class Period.

35.    Excluded from the Class are Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal governmental entities and

CLASS ACTION COMPLAINT

instrumentalities of the federal government, states and their subdivisions, agencies and instrumentalities, and persons who purchased Vehicle Carrier Services directly.

36.     In the last three years, over 4.5 million new cars and trucks were sold by new car dealerships in California and approximately 70% of those cars were manufactured by foreign car manufacturers (BMW, VW, Hyundai/Kia, Nissan, Honda and Toyota).  A substantial number of these foreign new cars were imported into the United States using Vehicle Carrier Services.  While Plaintiff does not know the exact number of the members of the Class, Plaintiff believes there are (at least) thousands of members in the Class.

37.     Common questions of law and fact exist as to all members of the Class. This is particularly true given the nature of Defendants' conspiracy, which was generally applicable to all members of the Class, thereby making appropriate relief with respect to the Class as a whole. Such questions of law and fact common to the Class include, but are not limited to:

(a)     Whether the Defendants and their co-conspirators engaged in a combination and conspiracy among themselves to fix, raise, maintain or stabilize the prices of Vehicle Carrier Services sold in the United States;

(b)     The identity of the participants of the alleged conspiracy;

(c)     The duration of the alleged conspiracy and the acts carried out by Defendants and their co-conspirators in furtherance of the conspiracy;

(d)     Whether the alleged conspiracy violated the Sherman Act, as alleged in the First Claim for Relief;

(e)     Whether the alleged conspiracy violated California state statutes, as alleged in the Second and Third Claims for Relief;

(f)     Whether the conduct of the Defendants and their co-conspirators, as alleged in this Complaint, caused injury to the business or property of Plaintiff and the members of the Class;

CLASS ACTION COMPLAINT

(g)   The effect of the alleged conspiracy on the prices of Vehicle Carrier Services sold in California during the Class Period;

(h)   Whether Plaintiff and members of the Class had any reason to know or suspect the conspiracy, or any means to discover the conspiracy;

(i)   Whether the Defendants and their co-conspirators fraudulently concealed the conspiracy's existence from Plaintiff and members of the Class; and

(j)   The appropriate relief for the Class.

38.   Plaintiff's claims are typical of the claims of the members of the Class, and Plaintiff will fairly and adequately protect the interests of the Class.  Plaintiff and all members of the Class are similarly affected by Defendants' wrongful conduct in that they paid artificially inflated prices for Vehicle Carrier Services purchased indirectly from the Defendants and/or their co-conspirators.

39.   Plaintiff's claims arise out of the same common course of conduct giving rise to the claims of the other members of the Class. Plaintiff's interests are coincident with, and not antagonistic to, those of the other members of the Class. Plaintiff is represented by counsel who are competent and experienced in the prosecution of antitrust and class action litigation.

40.   The questions of law and fact common to the members of the Class predominate over any questions affecting only individual members, including legal and factual issues relating to liability and damages.

41.   Class action treatment is a superior method for the fair and efficient adjudication of the controversy, in that, among other things, such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of evidence, effort and expense that numerous individual actions would engender. The benefits of proceeding through the class mechanism, including providing injured

CLASS ACTION COMPLAINT

1  persons or entities with a method for obtaining redress for claims that it might not be

2  practicable to pursue individually, substantially outweigh any difficulties that may

3  arise in management of this class action.

4     42.    The prosecution of separate actions by individual members of the Class

5  would create a risk of inconsistent or varying adjudications, establishing

6  incompatible standards of conduct for Defendants.

7                          **FACTUAL ALLEGATIONS**

8  **RORO Ships and Market for Vehicle Carrier Services**

9     43.    RO/RO ships are vessels designed to carry wheeled cargo, such as

10  automobiles, trucks, and other wheeled vehicles that can be driven on and off the

11  ship on their own wheels. This is in contrast to LOLO (Lift-on/Lift-off) vessels

12  which are used to load and unload cargo.  RORO vessels have built-in ramps which

13  allow the cargo to be efficiently "rolled on" and "rolled off" the vessel when in port.

14  While smaller ferries that operate across rivers and other short distances often have

15  built-in ramps, the term RORO is reserved for larger ocean-going vessels. The ramps

16  and doors may be stern only, or bow and stern for quick loading. New automobiles

17  that are transported by ship are often moved on a large type of RORO called a Pure

18  Car Carrier ("PCC") or Pure Car Truck Carrier ("PCTC").

19     44.    Although shipping industry cargo is normally measured by the metric

20  ton, RORO cargo is typically measured in units of lanes in meters (LIMs).  This is

21  calculated by multiplying cargo length in meters by the number of decks and by its

22  width in lanes (lane width differs from vessel to vessel and there are several industry

23  standards). A PCCs' cargo capacity is measured in car equivalent units (CEUs).

24     45.    Since 1970 the market for exporting and importing cars has increased

25  dramatically and the number and type of ROROs has increased. In 1973, Defendant

26  'K' Line built *European Highway*, the first PCC, which carried 4,200 automobiles.

27  PCCs are distinctive with a box-like superstructure running the entire length and

28  breadth of the hull, fully enclosing the cargo. They typically have a stern ramp and a

CLASS ACTION COMPLAINT

side ramp for dual loading of thousands of vehicles. These vessels have a usual speed of 16 knots at "eco-speed."

46.    Defendants and their co-conspirators provided Vehicle Carrier Services to foreign car manufacturers for transportation of Vehicles sold in California by transporting cars manufactured elsewhere for export to and sale in California.

47.    Plaintiff and members of the proposed Class purchased Vehicle Carrier Service indirectly from one or more of the Defendants by virtue of their purchase or lease of a new Vehicle in California during the Class Period.

48.    Defendants include the five shipping lines that control about 70 percent of the global market for carrying cars.

49.    The annual market for Vehicle Carrier Services in the United States is nearly a billion dollars.

**Market Structure and Characteristics Support the Existence of a Conspiracy**

50.    The structure and other characteristics of the market for Vehicle Carrier Services have made collusion among Defendants particularly attractive. Specifically, the Vehicle Carrier Services market: (1) is highly concentrated; (2) has high barriers to entry; (3) is highly interchangeable; (4) is rife with opportunities to meet and conspire; and (5) has excess capacity.

*1.    The Market for Vehicle Carriers Is Highly Concentrated*

51.    A concentrated market is more susceptible to collusion and other anticompetitive practices.  According to a September 6, 2012 Bloomberg article, citing Nomura Holdings Inc., Defendants controlled over 70 percent of the Vehicle Carrier Services market during the Class Period.

*2.    The Market for Vehicle Carrier Services Has High Barriers to Entry*

52.    There are substantial monetary and industry barriers that preclude or reduce entry into the Vehicle Carrier Services market.  Highly specialized equipment and industry knowledge are required such as RORO cargo ships, purposely built as car carriers.  These characteristics restrict the use of the ships to the Vehicle Carrier Services market.

CLASS ACTION COMPLAINT

53.   A new entrant into the business would face costly and lengthy start-up costs, including multi-million dollar costs associated with manufacturing or acquiring a fleet of Vehicle Carriers and other equipment, fuel, transportation and distribution infrastructure and skilled labor. It is estimated that the capital cost of a RORO is at least $95 million.[1]   Therefore, the Vehicle Carrier Services market involves economies of scale and scope which present barriers to entry.   Vehicle Carrier Services also require the establishment of customer routes based on long established relationships with foreign car manufacturers and with highly unionized ports in California.   Well-established routes and long term business relationships create additional barriers to entry.

54.   Defendants also own related shipping or transportation businesses they can utilize to provide additional services to clients, such as the operation of dedicated shipping terminals and inland transportation in California.

### 3.   *There is Inelasticity of Demand for Vehicle Carrier Services*

55.   "Elasticity" is a term used to describe the sensitivity of supply and demand to changes in one or the other. A global Vehicle Carrier Services cartel, as alleged here, profits from raising prices above competitive levels because demand for Vehicle Carrier Services is inelastic.   Normally, increased prices would result in declining sales, revenues, and profits as customers purchased substitute products or declined to buy altogether.   However, the inelastic demand for the Vehicle Carrier Services facilitates collusion, allowing Defendants to raise their prices without triggering customer substitution and lost sales revenue.

56.   Vehicle Carrier Services are inelastic because a RORO is the only ocean vessel that has the carrying capacity for a large number of Vehicles and foreign car manufacturers must employ Vehicle Carrier Services to transport their vehicles to California, regardless of whether prices are kept at supra-competitive levels. There is simply no substitution.

---

[1]   Asaf Ashar, *Marine Highways' New Direction*, J. OF COM. 38 (Nov. 21 2011).

CLASS ACTION COMPLAINT

### 4.    The Services Provided by Vehicle Carriers Are Interchangeable

57.    Defendants' Vehicle Carrier Services are similar and, hence, interchangeable making it easier to unlawfully agree on the price for and allocation of transportation services and to effectively collude to set prices.  These factors make it easier to form an unlawful cartel.

58.    Defendants' Vehicle Carrier Services are so similar that Vehicle Carrier Service customers make decisions based primarily on price, which further facilitate Defendants' conspiracy by making coordination on price much simpler.

59.    Pricing for Vehicle Carrier Services (per vehicle) remained relatively flat from 2001 to 2006.  In 2001, the per vehicle price was approximately $301.30, while in 2006 the per vehicle price was $305.79, an increase of less than 2%.  Beginning just prior to the Class Period, the price of Vehicle Carrier Services has increased by 23% and has far outpaced any increase in demand during the Class Period.

60.    In the absence of an unlawful price-fixing conspiracy, according to the laws of supply and demand, prices would not increase at a rate greater than the rate of demand, yet that is exactly what happened in the Vehicle Carrier Services market during the Class Period and has triggered investigations by JFTC, the DOJ, and other international antitrust commissions.

### 5.    Ample Opportunities to Meet and Conspire

61.    Defendants attended industry events where they have had the opportunity to meet and collude as to pricing.  Trade shows for shipping companies around the globe, include the Breakbulk conferences[2] and the biennial RO/RO trade show in Europe.

---

[2]    Breakbulk Magazine provides its readers with project cargo, heavy lift and RoRo logistics intelligence including news, trending, data and metrics. Breakbulk Magazine's global events include Breakbulk Transportation Conferences & Exhibitions, which "are the largest international events focused on traditional breakbulk logistics, heavy-lift transportation and project cargo trade issues." The conferences provide opportunities to "meet with specialized cargo carriers, ports, terminals, freight forwarders, heavy equipment transportation companies and packers."  *See* http://www.breakbulk.com/breakbulk-global-events (last visited June 19, 2013).

CLASS ACTION COMPLAINT

- 15 -

62.    Defendants 'K' Line and NYK Line are also members of the Transpacific Stabilization Agreement (TSA), which consists of "major ocean container shipping lines that carry cargo from Asia to ports and inland points in the U.S."  *See* "About TSA" at http://www.tsacarriers.org/about.html (last visited June 19, 2013).  The TSA Forum provides an opportunity to meet, exchange market information, and jointly conduct market research and to purportedly develop voluntary, non-binding guidelines for rates and charges.

63.    Defendants 'K' Line, NYK Line, and MOL GROUP have already been fined by the DOJ, JFTC, EC and various other antitrust commissions for their roles in a conspiracy to fix air freight forwarding fees across several continents.

64.    Defendants routinely enter into joint "vessel sharing" or "space charter" agreements and are the majority of all agreements registered with the Federal Maritime Commission ("FMC").   These agreements provide an opportunity for Defendants to discuss Vehicle shipping markets, routes, and rates and engage in illegal price fixing and bid rigging conspiracies.

### 6.    *The Market for Vehicle Carrier Services Has Excess Capacity*

65.    While the capacity of Vehicle Carriers to transport cars has increased since 2007, the utilization rate of Vehicle Carriers Services has fallen, and remained stable at a rate of approximately 83% since 2010.  Therefore, the market for Vehicle Carrier Services has operated in a state of excess capacity since 2008, as demonstrated by the tables below.

///

///

///

///

///

///

CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8



Source: The Car Carrier Market, 2004-2012; Hesnes Shipping AS

9
10
11
12
13
14
15
16
17
18
19
20



Source: The Platou Report 2004-2012

21

22    66.    In the face of such excess capacity, Defendants have lowered a carrier's
23 speed to conserve on fuel costs (referred to as "eco-speed").  By using "eco-speed,"
24 Defendants are able to use more ships at the same time, thereby decreasing capacity
25 and creating artificial capacity shortages.

26    67.    Defendants' actions of using "eco-speed" and vessel sharing are
27 colluding to reduce output in order to increase prices despite overcapacity in the
28 Vehicle Carrier Services market. By acting in concert pursuant to their conspiracy,

CLASS ACTION COMPLAINT
- 17 -

Defendants decreased the availability of Vehicle Carrier Services in the market, which caused prices to rise artificially during the Class Period.

68.    Defendants' practices of eco-speeding and vessel sharing represent concerted, collusive efforts to reduce output in order to increase prices despite overcapacity in the Vehicle Carrier Services market. By acting in concert, Defendants decreased the availability of Vehicle Carrier Services in the market, which caused prices to rise artificially during the Class Period.

**Collusion in the Vehicle Carrier Services Market**

69.    There is strong evidence of Defendants' collusion in raising and fixing prices and allocating markets. Such evidence includes: (1) Defendants raising prices at a rate that exceeded demand; (2) Defendants previously colluded in the freight forwarding services and paid substantial fines as a result; and (3) the DOJ, JFTC and other antitrust commissions are investigating Defendants' price fixing conduct in the Vehicle Carrier Services industry.

*1.    Defendants Raised Prices at a Rate that Far Exceeded Demand*

70.    Prices for Vehicle Carrier Services have been generally increasing since 2006 from $320 in 2000 to over $400 in 2012.

*2.    Defendants Previously Colluded in Different Markets*

71.    In 2007, the DOJ launched an investigation into price fixing among international air freight forwarders, including Defendants' affiliates and subsidiaries.

72.    On September 30, 2011, MOL Logistics (JAPAN) Co., Ltd., a wholly owned subsidiary of MOL, plead guilty to Sherman Act violations as a result of the DOJ's freight forwarding investigation, resulting in more than $120 million in criminal fines to date. MOL Logistics (JAPAN) Co. Ltd., conspired by participating in meetings, conversations, and communications to discuss certain components of freight forwarding service fees to be charged on air cargo shipments from Japan to the United States; and by agreeing on one or more components of the freight

CLASS ACTION COMPLAINT

forwarding service fees to be charged on air cargo shipments from Japan to the United States.

73.     On March 8, 2013, the DOJ announced that 'K' Line Logistics, Ltd. and Yusen Logistics Co., Ltd., a subsidiary of Defendant NYK Line, agreed to pay criminal fines of $3,501,246 and $15,428,207, respectively, for their roles in a conspiracy to fix certain freight forwarding fees for cargo shipped by air from the United States to Japan.

74.     On March 18, 2009, the JFTC ordered 12 companies to pay $94.7 million in fines for violations of the Japanese Antimonopoly Act ("AMA"). Included among the 12 companies were K Line Logistics, Ltd., a subsidiary of Defendant 'K' Line, Yusen Air & Sea Services Co., Ltd., a subsidiary of Defendant NYK Line, and MOL Logistics (JAPAN) Co., Ltd., a subsidiary of Defendant MOL.

75.     The JFTC concluded that the companies had, over a five-year period, met and agreed to, among other things, the amount of fuel surcharges, security charges, and explosive inspection charges that they would charge their international air freight forwarding customers. The agreements were, according to the JFTC, negotiated at meetings of the Japan Aircargo Forwarders Association.

76.     On March 28, 2012, the European Commission ("EC") fined 14 international groups of companies a total of $219 million, including Yusen Shenda Air & Sea Service (Shanghai) Ltd., a subsidiary of Defendant NYK Line.  According to the EC, "[i]n four distinct cartels, the cartelists established and coordinated four different surcharges and charging mechanisms, which are component elements 4 of the final price billed to customers for these services."

**3.     *DOJ and JFTC Are Investigating Price-Fixing in the Vehicle Carrier Services Market***

77.     On September 6, 2012, the JFTC executed raids at the Japanese offices of NYK Line, MOL, 'K' Line, WWL, and ECC as part of an investigation into price-fixing of Vehicle Carrier Services in violation of Japan's Antimonopoly Act.

CLASS ACTION COMPLAINT

78.    On September 7, 2012, Defendant WW ASA also reported that it had received a request for information and that its subsidiaries, WWL and ECC had been visited as part of an investigation related to the Japan Antimonopoly Act.  ECC also received requests for information from the DOJ.  According to Defendant WW ASA, the purpose of the requests "is to ascertain whether there is evidence of any infringement of competition law related to possible price cooperation between carriers and allocation of customers."

79.    The Japanese Business Daily reported that the shipping affiliates of Toyota Motor Corp. and Nissan Motor Co. were also among the companies raided by the JFTC. Toyota Motor Corp's shipping affiliate is Defendant ToyoFuji, and Nissan Motor Co.'s affiliate is Defendant Nissan MMC.

80.    Defendant CSAV issued a statement in mid-September revealing that its employees had received subpoenas from the DOJ as follows:  "[t]he investigation seeks to inquire into the existence of antitrust law violations related to cooperation agreements on prices and allocation of clients between car carriers."

81.    Shortly after the September 2012 raids, the DOJ confirmed that in coordination with the European Commission and the JFTC "[t]he antitrust division is investigating the possibility of anticompetitive practices involving the ocean shipping of cars, trucks, construction equipment, and other products."

**PLAINTIFF AND THE CLASS SUFFERED ANTITRUST INJURY**

82.    The Defendants' price-fixing conspiracy had the following effects, among others:

> (a)    Price competition has been restrained or eliminated with respect to Vehicle Carrier Services;
>
> (b)    The prices of Vehicle Carrier Services have been fixed, raised, maintained, or stabilized at artificially inflated levels;
>
> (c)    Indirect purchasers of Vehicle Carrier Services have been deprived of free and open competition; and

CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

(d)   Indirect purchasers of Vehicle Carrier Services paid artificially inflated prices.

83.   During the Class Period, Plaintiff and the members of the Class paid supra-competitive prices for Vehicle Carrier Services.   Car manufacturers and automobile dealers passed on the inflated charges to purchasers and lessees of new Vehicles in California.  Those overcharges have unjustly enriched Defendants.

84.   The market for Vehicle Carrier Services and the market for Vehicles are inextricably linked and intertwined because the market for Vehicle Carrier Services exists to serve the new car market in California.  The demand for new cars creates the demand for Vehicle Carrier Services.  According to a July 19, 2012 *Union Tribune* news article, California auto dealers sold 1.3 million new cars in California in 2011 alone.   According to the California New Car Dealership Association ("NCDA") 1.6 million new cars and light trucks were sold in California in 2012 and the NCDA expects 1.75 million new cars to be sold in California in 2013.  According to NCDA, 69% of these new cars sold were from foreign car manufacturers.

85.   The manufacturer and dealer markets for new cars are subject to vigorous price competition, have thin net margins, and are therefore at the mercy of their input costs.   Increases in the price of Vehicle Carrier Services leads to corresponding increases in prices for new Vehicles at the manufacturing and dealer levels.  When downstream distribution markets are highly competitive, as they are in the case of new cars, overcharges are passed through to ultimate consumers, such as the indirect-purchaser Plaintiff and the Class.

86.   Hence, the inflated prices of Vehicle Carrier Services in new cars resulting from Defendants' price-fixing conspiracy have been passed on to Plaintiff and the other members of the Class in California by manufacturers and dealers.

87.   The purpose of the conspiratorial conduct of the Defendants and their co-conspirators was to raise, fix, rig or stabilize the price of Vehicle Carrier Services

CLASS ACTION COMPLAINT

and, as a direct and foreseeable result, the price of new Vehicles shipped by Vehicle Carriers.

88.    The precise amount of the overcharge impacting the prices of new Vehicles shipped by Vehicle Carrier can be measured and quantified. Commonly used and well-accepted economic models can be used to measure both the extent and the amount of the supra-competitive charge passed-through the chain of distribution. Thus, the economic harm to Plaintiff and the members of the Class can be quantified.

89.    By reason of the alleged violations of the antitrust laws and other laws alleged herein, Plaintiff and the members of the Class have sustained injury to their businesses or property, having paid higher prices for Vehicle Carrier Services than they would have paid in the absence of the Defendants' illegal contract, combination, or conspiracy, and, as a result, have suffered damages in an amount presently undetermined. This is an antitrust injury of the type that the antitrust laws were meant to punish and prevent.

### PLAINTIFF'S CLAIMS ARE NOT BARRED BY THE STATUTE OF LIMITATIONS

90.    Plaintiff repeats and re-alleges the allegations set forth above.

91.    Plaintiff and members of the Class had no knowledge of the combination or forth therein, until shortly before the filing of this Complaint. Plaintiff and members of the Class did not discover, and could not have discovered through the exercise of reasonable diligence, the existence of the conspiracy alleged herein any earlier than September 6, 2012, the date the JFTC announced raids of certain Defendants' offices for their role in the criminal price-fixing conspiracy alleged herein.

92.    Plaintiff and members of the Class are consumers who had no direct contact or interaction with the Defendants, and had no means from which they could have discovered the combination and conspiracy described in this Complaint before the September 6, 2012 raids.

CLASS ACTION COMPLAINT

93.    No information in the public domain was available to Plaintiff and members of the Class prior to the announced raids on September 6, 2012 that suggested that the Defendants were involved in a criminal conspiracy to fix the price charged for Vehicle Carrier Services. Plaintiff and members of the Class through the exercise of due diligence had no means of obtaining any facts or information concerning any aspect of Defendants' dealings with OEMs or other direct purchasers, much less the fact that they had engaged in the combination and conspiracy alleged herein.

94.    For these reasons, the statute of limitations as to Plaintiff and the Class's claims did not begin to run, and has been tolled with respect to the claims that Plaintiff and members of the Class have alleged in this Complaint.

**Fraudulent Concealment Tolled the Statute of Limitations**

95.    In the alternative, the statute of limitations is tolled by the doctrine of fraudulent concealment.  Prior to September 6, 2012, JFTC announced raids of certain Defendants' offices for their role in the criminal price-fixing conspiracy, Plaintiff and members of the Class were unaware of Defendants' unlawful conduct, and did not know before then that they were paying supra-competitive prices for Vehicle Carrier Services throughout the United States and California during the Class Period. No actual or constructive information was made available to Plaintiff and members of the Class.

96.    The affirmative acts in furtherance of the conspiracy, were wrongfully concealed and carried out in a manner that precluded detection.  Defendants met and communicated in secret and agreed to keep the facts about their collusive conduct from being discovered by any member of the public or by the direct purchasers with whom they did business.

97.    Because the alleged conspiracy was both self-concealing and affirmatively concealed by Defendants and their co-conspirators, Plaintiff and members of the Class had no knowledge of the alleged conspiracy, or of any facts or information that would have caused a reasonably diligent person to investigate

CLASS ACTION COMPLAINT

- 23 -

whether a conspiracy existed, until September 6, 2012, when the JFTC announced raids of certain Defendants' offices for their role in the criminal price-fixing conspiracy alleged herein.

98.    For these reasons, the statute of limitations applicable to Plaintiff's and the Class's claims were tolled and did not begin to run until September 6, 2012.

## FIRST CLAIM FOR RELIEF

### Violation of Section 1 of the Sherman Act

### (On Behalf of Plaintiff and the Class against All Defendants)

99.    Plaintiff repeats and re-alleges the allegations set forth above.

100.    Defendants and unnamed conspirators entered into and engaged in a contract, combination, or conspiracy in unreasonable restraint of trade in violation of Section 1 of the Sherman Act (15 U.S.C. § 1).

101.    The acts done by each of the Defendants as part of, and in furtherance of, their contract, combination, or conspiracy were authorized, ordered, or done by their officers, agents, employees, or representatives while actively engaged in the management of Defendants' affairs.

102.    During the Class Period, Defendants and their co-conspirators entered into a continuing agreement, understanding and conspiracy in restraint of trade to artificially fix, raise, stabilize, and control prices for Vehicle Carrier Services, thereby creating anticompetitive effects.

103.    The anticompetitive acts were intentionally directed at the United States market for Vehicle Carrier Services and had a substantial and foreseeable effect on interstate commerce by raising and fixing prices for Vehicle Carrier Services throughout the United States.

104.    The conspiratorial acts and combinations have caused unreasonable restraints in the market for Vehicle Carrier Services.

CLASS ACTION COMPLAINT

105. As a result of Defendants' unlawful conduct, Plaintiff and other similarly situated indirect purchasers in the Class who purchased Vehicle Carrier Services have been harmed by being forced to pay inflated, supra-competitive prices for Vehicle Carrier Services.

106. In formulating and carrying out the alleged agreement, understanding and conspiracy, Defendants and their co-conspirators did those things that they combined and conspired to do, including but not limited to the acts, practices and course of conduct set forth herein.

107. Defendants' conspiracy had the following effects, among others:

(a)   Price competition in the market for Vehicle Carrier Services has been restrained, suppressed, and/or eliminated in the United States;

(b)   Prices for Vehicle Carrier Services provided by Defendants and their co-conspirators have been fixed, raised, maintained, and stabilized at artificially high, non-competitive levels throughout the United States; and

(c)   Plaintiff and members of the Class who purchased Vehicle Carrier Services indirectly from Defendants and their co-conspirators have been deprived of the benefits of free and open competition.

108. Plaintiff and members of the Class have been injured and will continue to be injured in their business and property by paying more for Vehicle Carrier Services purchased indirectly from Defendants and the co-conspirators than they would have paid and will pay in the absence of the conspiracy.

109. The alleged contract, combination, or conspiracy is a per se violation of the federal antitrust laws.

110. Plaintiff and members of the Class are entitled to an injunction against Defendants, preventing and restraining the violations alleged herein.

///

///

CLASS ACTION COMPLAINT

**SECOND CLAIM FOR RELIEF**

**Violations of California Business and Professions Code §§ 16700 *et seq*.**

**(On Behalf of Plaintiff and the Class against All Defendants)**

111.    Plaintiff repeats and re-alleges the allegations set forth above.

112.    During the Class Period, Defendants and their co-conspirators engaged in a continuing contract, combination or conspiracy with respect to the provision of Vehicle Carrier Services in unreasonable restraint of trade and commerce and in violation of California Business and Professions Code §§ 16700 *et seq*.

113.    The contract, combination, or conspiracy consisted of an agreement among the Defendants and their co-conspirators to fix, raise, inflate, stabilize, and/or maintain at artificially supra-competitive prices for Vehicle Carrier Services and to allocate customers for Vehicle Carrier Services in California.

114.    In formulating and effectuating this conspiracy, Defendants and their co-conspirators performed acts in furtherance of the combination and conspiracy, including:

> (a)    participating in meetings and conversations among themselves in the United States and elsewhere during which they agreed to price Vehicle Carrier Services at certain levels, and otherwise to fix, increase, inflate, maintain, or stabilize effective prices paid by Plaintiff and members of the Damages Class with respect to Vehicle Carrier Services provided in California;

> (b)    allocating customers and markets for Vehicle Carrier Services provided in California in furtherance of their agreements; and

> (c)    participating in meetings and conversations among themselves in the United States and elsewhere to implement, adhere to, and police the unlawful agreements they reached.

115.    Defendants and their co-conspirators engaged in the actions described above for the Purpose of carrying out their unlawful agreements to fix, increase,

CLASS ACTION COMPLAINT

maintain, or stabilize prices and to allocate customers with respect to Vehicle Carrier Services.

116.   Defendants' anticompetitive acts described above were knowing, willful and constitute violations or flagrant violations of California Business and Professions Code §§ 16700 *et seq.*

117.   During the Class Period, Defendants and their co-conspirators entered into and engaged in a continuing unlawful trust in restraint of the trade and commerce described above in violation of Section 16720 of the California Business and Professions Code.   Defendants, and each of them, have acted in violation of Section 16720 to fix, raise, stabilize, and maintain prices of, and allocate markets for, Vehicle Carrier Services at supra-competitive levels.

118.   The aforesaid violations of Section 16720 of the California Business and Professions Code consisted, without limitation, of a continuing unlawful trust and concert of action among the Defendants and their co-conspirators, the substantial terms of which were to fix, raise, maintain, and stabilize the prices of, and to allocate markets for, Vehicle Carrier Services.

119.   The combination and conspiracy alleged herein has had, inter alia, the following effects:  price competition in the provision of Vehicle Carrier Services has been restrained, suppressed, and/or eliminated in the State of California; prices for Vehicle Carrier Services provided by Defendants and their co-conspirators have been fixed, raised, stabilized, and pegged at artificially high, non-competitive levels in the State of California and throughout the United States; and those who purchased Vehicle Carrier Services directly or indirectly from Defendants and their co-conspirators have been deprived of the benefit of free and open competition.

120.   As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Class have been injured in their business and property in that they paid more for Vehicle Carrier Services than they otherwise would have paid in the absence of Defendants' unlawful conduct.  As a result of Defendants'

CLASS ACTION COMPLAINT

violation of Section 16720 of the California Business and Professions Code, Plaintiff and members of the Class seek treble damages and their cost of suit, including a reasonable attorney's fees, pursuant to Section 16750(a) of the California Business and Professions Code.

### THIRD CLAIM FOR RELIEF

**Violations of California Business and Professions Code §§ 17200 *et seq*.**

**(On Behalf of Plaintiff and the Class against All Defendants)**

121.   Plaintiff repeats and re-alleges the allegations set forth above.

122.   Defendants have engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of California Business and Professions Code § 17200 *et seq*.

123.   During the Class Period, Defendants marketed, sold, or distributed Vehicle Carrier Services in California, and committed and continue to commit acts of unfair competition, as defined by Sections 17200 *et seq*. of the California Business and Professions Code, by engaging in the acts and practices specified above.

124.   This claim is instituted pursuant to Sections 17203 and 17204 of the California Business and Professions Code, to obtain restitution from these Defendants for acts, as alleged herein, that violated Section 17200 of the California Business and Professions Code, commonly known as the Unfair Competition Law.

125.   The Defendants' conduct as alleged herein violated Section 17200. The acts, omissions, misrepresentations, practices and non-disclosures of Defendants, as alleged herein, constituted a common, continuous, and continuing course of conduct of unfair competition by means of unfair, unlawful, and/or fraudulent business acts or practices within the meaning of California Business and Professions Code, Section 17200, et seq., including, but not limited to, the following: (1) the violations of Section 1 of the Sherman Act, as set forth above; (2) the violations of Section 16720, et seq., of the California Business and Professions Code, set forth above.

CLASS ACTION COMPLAINT

126.     Defendants' acts, omissions, misrepresentations, practices, and non-disclosures, as described above, whether or not in violation of Section 16720, et seq., of the California Business and Professions Code, and whether or not concerted or independent acts, are otherwise unfair, unconscionable, unlawful or fraudulent;

127.     Defendants' acts or practices are unfair to purchasers of Vehicle Carrier Services (or Vehicles transported by them) in the State of California within the meaning of Section 17200, California Business and Professions Code; and

128.     Defendants' acts and practices are fraudulent or deceptive within the meaning of Section 17200 of the California Business and Professions Code.

129.     Plaintiff and members of the Class are entitled to full restitution and/or disgorgement of all revenues, earnings, profits, compensation, and benefits that may have been obtained by Defendants as a result of such business acts or practices.

130.     The illegal conduct alleged herein is continuing and there is no indication that Defendants will not continue such activity into the future.

131.     The unlawful and unfair business practices of Defendants, and each of them, as described above, have caused and continue to cause Plaintiff and the members of the Class to pay supra-competitive and artificially-inflated prices for Vehicle Carrier Services (or Vehicles transported by them). Plaintiff and the members of the Class suffered injury in fact and lost money or property as a result of such unfair competition.

132.     The conduct of Defendants as alleged in this Complaint violates Section 17200 of the California Business and Professions Code.

133.     As alleged in this Complaint, Defendants and their co-conspirators have been unjustly enriched as a result of their wrongful conduct and by Defendants' unfair competition. Plaintiff and the members of the Class are accordingly entitled to equitable relief including restitution and/or disgorgement of all revenues, earnings, profits, compensation, and benefits that may have been obtained by Defendants as a

CLASS ACTION COMPLAINT

result of such business practices, pursuant to the California Business and Professions Code §§ 17203 and 17204.

## DEMAND FOR JURY TRIAL

Plaintiff, on behalf of himself and the Class of all others similarly situated, hereby demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

Accordingly, Plaintiff, on behalf of himself and the Class of all others so similarly situated, respectfully requests that:

A.   The Court determine that this action may be maintained as a class action under Rule 23(a), (b)(2)-(3) of the Federal Rules of Civil Procedure, and direct that reasonable notice of this action, as provided by Rule 23(c)(2) of the Federal Rules of Civil Procedure, be given to each and every member of the Class;

B.   That the unlawful conduct, contract, conspiracy, or combination alleged herein be adjudged and decreed:

(a)   An unreasonable restraint of trade or commerce in violation of Section 1 of the Sherman Act;

(b)   A per se violation of Section 1 of the Sherman Act; and

(c)   An unlawful combination, trust, agreement, understanding and/or concert of action in violation of the California state statutes as set forth herein.

C.   Plaintiff and the members of the Class recover damages, to the maximum extent allowed under such laws, and that a joint and several judgment in favor of Plaintiff and the members of the Class be entered against Defendants in an amount to be trebled to the extent such laws permit;

D.   Plaintiff and the members of the Class recover damages, to the maximum extent allowed by such laws, in the form of restitution and/or disgorgement of profits unlawfully gained from them;

////

CLASS ACTION COMPLAINT

E.      Defendants, their affiliates, successors, transferees, assignees and other officers, directors, partners, agents and employees thereof, and all other persons acting or claiming to act on their behalf or in concert with them, be permanently enjoined and restrained from in any manner continuing, maintaining or renewing the conduct, contract, conspiracy, or combination alleged herein, or from entering into any other contract, conspiracy, or combination having a similar purpose or effect, and from adopting or following any practice, plan, program, or device having a similar purpose or effect;

F.      Plaintiff and the members of the Class be awarded restitution, including disgorgement of profits Defendants have obtained as a result of their acts of unfair competition and acts of unjust enrichment;

G.      Plaintiff and the members of the Class be awarded pre- and post-judgment interest as provided by law, and that such interest be awarded at the highest legal rate from and after the date of service of this Complaint;

H.      Plaintiff and the members of the Class recover their costs of suit, including reasonable attorneys' fees, as provided by law; and

I.      Any other and further relief as the case may require and the Court may deem just and proper.


                              Respectfully Submitted,

Dated:  July 1, 2013          DICKS & WORKMAN
                              ATTORNEYS AT LAW, APC



                        By:   /s/   Linda G. Workman
                              Linda G. Workman,
                              Attorneys for ALEX WHITE, Plaintiff


CLASS ACTION COMPLAINT
                              - 31 -